IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA** ) Criminal No. 5:26-CR-226 (LGS)
)
**v.** )
)
**JAMIE GUILLEN,** )
)
)
**Defendant.** )

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AND FOR OTHER RELIEF**

Dated: August 24, 2026

Respectfully submitted,

Benjamin A. Gillis
Assistant United States Attorney
Bar Roll No. 704915

# TABLE OF CONTENTS

FACTUAL BACKGROUND ..... 2

ARGUMENT ..... 4

I. The Defendant Waived the Argument that He is Entitled to Relief Based on Mr. Sarcone's Alleged Lack of Authority. ..... 4

II. Mr. Sarcone Was Validly Exercising Authority over the Office When the Office Declined the Proposed Resolutions and the Grand Jury Indicted the Defendant. ..... 6

III. The Indictment Should Not Be Dismissed Because It Was Lawfully Obtained by Duly Authorized AUSAs. ..... 14

IV. The Indictment Should Not Be Dismissed Based on Outrageous Government Conduct or Vindictive Prosecution. ..... 16

A. Outrageous Government Conduct ..... 16

B. Vindictive Prosecution ..... 19

V. There Is No Basis or Authority for Court Oversight Over Future Plea Negotiations ..... 22

VI. The Defendant Is Not Entitled to Discovery on His Claims. ..... 23

CONCLUSION ..... 25

## INTRODUCTION

On September 26, 2025, Jamie Guillen was charged by complaint with a violation of 18 U.S.C. § 2252A(a)(2) (distribution and receipt of child pornography). The Defendant subsequently asked the U.S. Attorney's Office (the "Office") to allow him to resolve his case with a guilty plea to the lesser charge of possession of child pornography. The Office, led by First Assistant U.S. Attorney ("FAUSA") John A. Sarcone III, denied the request. The Defendant's attorneys then appealed directly to Mr. Sarcone, asking him to approve a plea to a possession of child pornography charge. When that effort proved unsuccessful, Guillen adopted the position that Mr. Sarcone lacked authority to engage in plea negotiations and now moves to dismiss the indictment on that basis. His motion should be denied for three reasons.

First, the Defendant waived his challenge to Mr. Sarcone's authority by expressly requesting that Mr. Sarcone exercise that authority in his favor. The Defendant intentionally relinquished his right to contest the bases of Mr. Sarcone's appointment as a special attorney and designation as FAUSA, and should not be permitted to avoid this true waiver now.

Second, Mr. Sarcone's appointment as special attorney and designation as FAUSA were proper. The government acknowledges that its arguments were rejected recently by a divided panel of the Second Circuit in *In re Grand Jury Subpoenas*, Case No. 26-156, __ F.4th__, 2026 WL 2450485 (2d Cir. Aug. 21, 2026) (affirming this court's previous order quashing subpoenas and disqualifying Mr. Sarcone from involvement in the underlying investigation). Likewise, two other Circuits have rejected similar arguments. *See United States v. Jackson*, No. 24-6465, __ F.4th__, 2026 WL 2387099, at *2 (9th Cir. Aug. 17, 2026); *United States v. Giraud*, 160 F.4th 390, 400–406 (3d Cir. 2025). Nevertheless, the government repeats these arguments here for

purposes of preservation. The government will seek *certiorari* from the Supreme Court in both *Jackson* and *In re Grand Jury Subpoenas*. Notably, the Ninth Circuit has granted the government's motion to stay its mandate in *Jackson*, pending the outcome of the government's cert. petition. *See* Case No. 24-6465, Dkt. 63.1. The government plans to file a similar stay motion in *In re Grand Jury Subpoenas*.

Third, even if the Attorney General's delegation of authority to Mr. Sarcone as FAUSA was invalid, the Defendant's motion to dismiss the indictment should be denied because the indictment was lawfully obtained by duly authorized AUSAs. Moreover, the Defendant's claims of outrageous government conduct and vindictive prosecution are without merit. This Court also should reject the Defendant's improper requests to oversee plea negotiations and grant discovery.

## FACTUAL BACKGROUND

1. On February 17, 2025, Carla B. Freedman, the U.S. Attorney for the Northern District of New York ("NDNY") appointed by President Biden and confirmed by the Senate, left office. *See* https://perma.cc/3FSP-TTM5. By operation of the default provision of the FVRA, 5 U.S.C. § 3345(a)(1), Daniel Hanlon, who was then FAUSA for the district, became Acting U.S. Attorney. On February 28, 2025, the Attorney General appointed Mr. Sarcone as U.S. Attorney pursuant to 28 U.S.C. § 546, effective March 17, 2025. Under that statute, Mr. Sarcone was authorized to serve as U.S. Attorney on an interim basis for 120 days. *See* 28 U.S.C. § 546(c)(2).[1]

2. On July 14, 2025, the last day of Mr. Sarcone's interim term, the Board of Judges for the NDNY declined to exercise its authority under 28 U.S.C. § 546(d) to appoint a U.S. Attorney for the district. *See* https://perma.cc/XP4Z-WB8F. That same day, Mr. Hanlon was reassigned to Deputy U.S. Attorney, rendering the FAUSA role vacant. Mr. Sarcone was appointed as a special attorney under authority including 28 U.S.C. §§ 509, 510, and 515, and designated as the FAUSA, effective July 15, 2025.[2]

---

[1] This Court recited these facts in *In re Grand Jury Subpoenas to Office of N.Y. State Attorney General*, 814 F. Supp. 3d 284, 288-89 (N.D.N.Y. Jan. 8, 2026).

[2] On October 8, 2025, the Attorney General confirmed that Mr. Sarcone's appointment as special attorney and designation as FAUSA was done at her direction and under her general delegation authority. *In re Grand Jury Subpoenas*, 814 F. Supp. 3d at 289.

3. Accordingly, the Executive Office for United States Attorneys ("EOUSA") issued a letter appointing Mr. Sarcone as special attorney and authorizing him "to conduct in the Northern District of New York, any kind of legal proceedings, civil or criminal, including Grand Jury proceedings and proceedings before United States Magistrates, which United States Attorneys are authorized to conduct." The letter states that Mr. Sarcone's appointment as special attorney "is indefinite." Likewise, the General Counsel for EOUSA approved a written request to appoint Mr. Sarcone as FAUSA for a period of one year. Mr. Sarcone's designation as FAUSA was effective July 15, 2025.[3] By operation of the default provision of the FVRA, Mr. Sarcone began serving as Acting U.S. Attorney on July 15, 2025. *See* 5 U.S.C. § 3345(a).

4. On September 26, 2025, the Defendant was charged by complaint in NDNY with a violation of 18 U.S.C. § 2252A(a)(2) (distribution and receipt of child pornography). Dkt. 1. The NDNY Office of the Federal Public Defender ("FPD") was appointed to represent the Defendant, with Assistant Federal Public Defender ("AFPD") Randi Bianco appearing. *See* Dkt. 11, 14. An initial appearance and detention hearing were held on September 29 and October 2, 2025, respectively, and the Defendant was released on conditions. *See* Dkt. 18.

5. On December 23, 2025, AFPD Bianco requested by email that the Office dismiss the complaint in lieu of New York State charges, which were at that time pending in Carthage, New York, Village Court. Subsequently, AFPD Bianco proposed that, in the alternative, the Defendant be allowed to plead guilty to a violation of 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography).

6. On January 8, 2026, this Court, sitting by designation, determined in a separate case that Mr. Sarcone was not properly appointed as Acting United States Attorney under the automatic-succession provision of the FVRA and that the Attorney General could not exercise her general delegation authority to vest in Mr. Sarcone the authority of a U.S. Attorney. *In re Grand Jury Subpoenas*, 814 F. Supp. 3d 284, 292-98.

7. On February 10, 2026, Mr. Sarcone's tenure as Acting U.S. Attorney expired under 5 U.S.C. § 3346(a)(1). On February 11, 2026, the Board of Judges for the NDNY appointed attorney Donald Kinsella as U.S. Attorney pursuant to 28 U.S.C. § 546(d). *See* https://perma.cc/N7CU-2ZWC. The next day, the President terminated Mr. Kinsella's position as U.S. Attorney. Mr. Sarcone continues to serve as FAUSA for the district. *See* https://perma.cc/Z6AV-D629.

8. On March 2, 2026, AUSA Benjamin Gillis advised AFPD Bianco by email that the Office declined to dismiss the complaint and also declined to permit the Defendant to plead to a possession of child pornography charge. AUSA Gillis further advised AFPD

[3] *In re Grand Jury Subpoenas*, 814 F. Supp. 3d at 289.

Bianco that the Office would agree to a resolution involving the Defendant pleading guilty, without a plea bargain, to a single count of distribution of child pornography.

9. On or about March 23, 2026, Federal Public Defender Eric Schillinger resubmitted a request for an "alternate disposition" in the Defendant's case directly to Mr. Sarcone.[4]

10. On June 9, 2026, AUSA Gillis advised AFPD Bianco by email that Mr. Sarcone declined to permit the Defendant to plead to a possession of child pornography charge.

11. On June 23, 2026, AUSA Gillis inquired of AFPD Bianco by email "how the defense intends to proceed from here." On June 24, AFPD Bianco replied that the Defendant would not agree to further exclusions of speedy trial time and expressed an understanding that the government would seek an indictment.

12. On July 2, 2026, a NDNY grand jury returned an indictment charging the Defendant with seven counts of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). Dkt. 32. In addition to the grand jury foreperson, the indictment was signed by AUSA Gillis. *Id*. at 2. Mr. Sarcone's name and title as FAUSA appeared on the signature block, but he did not sign the indictment. *Id*. Then-Acting Attorney General Todd Blanche's name also appeared on the signature block. *Id*. The case was assigned to U.S. District Judge Anthony J. Brindisi.

## ARGUMENT

### I. The Defendant Waived the Argument that He is Entitled to Relief Based on Mr. Sarcone's Alleged Lack of Authority.

As an initial matter, the Defendant has waived his claim that Mr. Sarcone lacked legal authority to supervise the Office during the period when the Defendant's indictment was presented and returned, and when his proposals to resolve the case were considered and ultimately refused. The facts pertaining to Mr. Sarcone's role in the Office have not changed since July 15, 2025—when he was appointed as a special attorney, designated as FAUSA, and became Acting U.S. Attorney by operation of the default provision of the FVRA, 5

[4] Email from Federal Public Defender Schillinger to FAUSA Sarcone, dated March 23, 2026. A copy of this email will be provided to the Court and defense upon request.

U.S.C.§ 3345(a). Those facts were publicly available, including on the Court's own website,[5] and the Defendant knew or should have known those facts at the time that he submitted his initial request that the Office dismiss his case; his subsequent request that the Office permit him to plead to a possession of child pornography charge; and finally when he requested FAUSA Sarcone reconsider the denial of his previous proposals.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (citation modified). "A finding of true waiver applies . . . when . . . defendants not only failed to object to what they now describe as error, but they actively solicited it, in order to procure a perceived . . . benefit." *United States v. Quinones*, 511 F.3d 289, 321 (2d Cir. 2007). That is exactly what occurred here.

The Defendant did not complain when his initial requests that the complaint be dismissed and that he be permitted to plead to an alternative charge were declined on March 2, 2026. Instead, the Defendant repeatedly sought for the Office to reconsider his proposals and agreed to exclusions of pre-indictment speedy trial time to facilitate those negotiations. *See, e.g.*, Dkt.29, at 2 (stipulation for exclusion of pre-indictment speedy trial time, specifically referencing that the Defendant had submitted a "proposed pre-indictment resolution" that the government was actively considering). Indeed, FPD Schillinger personally and specifically requested that FAUSA Sarcone reconsider an "alternate disposition" in the Defendant's case. *See* Factual Background, Paragraph 9, *supra*. By requesting renewed consideration under these circumstances, the Defendant accepted the decision-making authority of FAUSA Sarcone and others in leadership positions in the Office. He should not be permitted to challenge Mr.

[5] https://www.nynd.uscourts.gov/news/inquiries-regarding-designation-john-sarcone-be-acting-us-attorney-ndny (July 24, 2025).

Sarcone's authority and role in the Office's decision-making process only when his effort to invoke that authority in his favor proved unsuccessful.

## II. Mr. Sarcone Was Validly Exercising Authority over the Office When the Office Declined the Proposed Resolutions and the Grand Jury Indicted the Defendant.

The Defendant argues that the indictment should be dismissed because Mr. Sarcone was invalidly leading the Office. Dkt. 40, at 10-11. Putting aside, for now, that that dismissal of the indictment is not the proper remedy here, the government has advanced substantial arguments that the delegation of authority to Mr. Sarcone by the Attorney General as special attorney, and his designation as FAUSA, were valid.[6] While the Second Circuit has rejected those arguments in a split decision, *In re Grand Jury Subpoenas*, 2026 WL 2450485, **12-15 (2d Cir. Aug. 21, 2026), the government plans to seek Supreme Court review of these issues, *see Jackson*, 25-6214, Dkt.63.1 (granting government motion to stay mandate pending filing of cert. petition) Contrary to the majority decision in *In re Grand Jury Subpoenas*, Mr. Sarcone was validly serving as FAUSA, both when the Office declined the Defendant's requests for dismissal and a plea to an alternative charge, and later, when the indictment was returned, based on the Attorney General's appropriate delegation of authority to lead the Office.

Congress has authorized the Attorney General to delegate authority, including the non-exclusive duties of a U.S. Attorney, to other Department officers and employees. The Attorney

---

[6] The Defendant's motion to dismiss the indictment concerns actions taken by the Office *after* Mr. Sarcone's tenure as Acting U.S. Attorney ended, and when he held only the title of Special Attorney and FAUSA. Insofar as the instant motion to dismiss rests on a challenge to Mr. Sarcone's authority as Acting U.S. Attorney, the government relies on and incorporates by reference the arguments it advanced in its appeal in *In re Grand Jury Subpoenas*, 2d Cir. Case No. 26-156, and in its opposition to a similar motion to dismiss in *United States v. Dunlap*, N.D.N.Y. Case No. 25-CR-00302, Dkt. 45 (currently pending before this Court), defending the validity of Mr. Sarcone's service as Acting U.S. Attorney by operation of the default provision of the FVRA, 5 U.S.C. § 3345(a).

General is the "head of the Department of Justice," 28 U.S.C. § 503, and is vested with "[a]ll functions" of the Department's officers, agencies, and employees, subject to narrow exceptions not relevant here, id. § 509. That includes the U.S. Attorneys' functions to conduct litigation in their districts. Indeed, § 515(a) specifies that the Attorney General may "conduct any kind of legal proceeding, civil or criminal, . . . which United States attorneys are authorized by law to conduct." Congress also independently vested the Attorney General with plenary authority to conduct and supervise litigation on behalf of the United States. See *id*. §§ 516-519.

The Attorney General has unquestioned authority to appoint various attorneys within the Department and to delegate his functions to those attorneys. Congress has specifically empowered the Attorney General to appoint other attorneys to carry out the Department's functions, including special attorneys and special assistants to the Attorney General, *id*. § 515(a), (b), Assistant U.S. Attorneys, id. § 542(a), special attorneys to assist U.S. Attorneys, *id*. § 543, and other "officials" to "detect and prosecute crimes against the United States," id. § 533(1). And the Attorney General may delegate "any function of the Attorney General" to "any other officer, employee, or agency of the Department of Justice," *id*. § 510, and may direct any Department officer "or any attorney specially appointed by the Attorney General under law" to "conduct any kind of legal proceeding, civil or criminal . . . which United States attorneys are authorized by law to conduct," *id*. § 515(a); *see also id.* § 518(b).

In sum, the Attorney General has broad authority to conduct and supervised all litigation on behalf of the United States, *see generally In re Persico*, 522 F.2d 41, 54-55 (2d Cir. 1975), to appoint various attorneys within the Department of Justice, *and* to delegate "any" of her functions to those attorneys. 28 U.S.C. §§ 510; *see also id*. §§ 515-19; *United States v.*

*Weyhrauch*, 544 F.3d 969, 974 (9th Cir. 2008) (per curiam) (recognizing delegation authority under § 515(a)). As the Second Circuit has explained:

> [T]he Attorney General has authority to assign other officers of the Department of Justice, not only under 28 U.S.C. § 515, but also under the other statutes giving [her] power over criminal litigation. If it were otherwise, [her] broad power to enforce the criminal laws of the United States would be seriously hampered at its inception—the initiation of a criminal case by presenting evidence before grand juries.

*Persico*, 522 F.2d at 55.

The FVRA does not prohibit the exercise of lawfully delegated powers by non-acting officials—and it certainly does not prohibit an agency head from delegating her own powers independent of the vacant office. An "acting officer" is one who can perform all the functions and duties of the vacant office without qualification—*i.e.*, the person who can fully act as the absent officer. Indeed, that is why the person uses the title of the vacant office—*e.g.*, Acting U.S. Attorney—and why the title has significance. The FVRA is the exclusive means for temporarily authorizing service as an *acting* official. 5 U.S.C. § 3347(a).

Delegation is different. A delegation of authority occurs when one officer empowers another official to perform a function vested in that officer. Delegations are limited by the scope of the delegation; they are not necessarily limited to times of vacancies; they do not confer titles; and they are valid only if the function is delegable. *See, e.g., United States v. Giordano*, 416 U.S. 505, 512-23 (1974). A delegation cannot include any functions vested exclusively in the vacant PAS office by statute or regulation, *i.e.*, non-delegable duties.[7]

[7] This Court expressly recognized the difference between service as a delegee and service as an acting official. In a separate matter, it held that Mr. Sarcone, in his capacity as FAUSA, could not be delegated the authority to seek disclosure of tax information pursuant to 26 U.S.C. §6103(i). *See In re Order to Authorize Disclosure of Tax Returns*, No. 25 Misc. 22 (LGS), 2026

So although the FVRA prohibits the use of general delegation authority to establish an acting officer who can exercise all delegable and non-delegable duties of an office, *see* 5 U.S.C. § 3347(b), it does not restrict an agency head's authority to otherwise delegate her delegable duties. The Attorney General has the authority to supervise litigation in the NDNY, 28 U.S.C. §§ 509, 515-19, and that authority is delegable, 28 U.S.C. §§ 510, 515. Mr. Sarcone thus has the authority to supervise the office regardless of whether he holds the office of U.S. Attorney in an acting capacity.

The Attorney General's delegation of authority to Mr. Sarcone is consistent with well-established practice—endorsed by all three branches of government—recognizing that an agency head may delegate authority to perform certain functions and duties of a vacant PAS office, even where the individual would not be eligible to serve in an "acting" capacity under the FVRA.

The Executive Branch has long understood delegations of authority to allow the duties of an office to be performed during a vacancy when there is no acting official in place. Shortly after the FVRA was enacted, the Office of Legal Counsel determined that "the Act permits" certain "responsibilities to be delegated to other appropriate officers and employees in the agency" because "Congress understood that there would be occasions . . . when there would, for a period, be no one qualified to serve in an acting capacity." *Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 72 (1999). Accordingly, executive officials routinely carry out the functions of a vacant PAS office pursuant to a delegation of authority where no acting official is available. *See, e.g.*, Anne Joseph O'Connell, *Actings*, 120

---

WL 63331, at *3 (N.D.N.Y. Jan. 8, 2026). Mr. Sarcone was vulnerable to that challenge only because, in his capacity as FAUSA, he could exercise only delegable authority, whereas an Acting U.S. Attorney would be fully empowered to exercise all authority of a U.S. Attorney, both delegable and non-delegable.

Colum. L. Rev. 613, 634 (2020) (noting that "many functions and duties are regularly delegated" to executive officials).

Notably, Congress has endorsed the view that executive officials may exercise authority pursuant to delegations that are independent of, and compatible with, the FVRA. In enacting the FVRA, the Senate Committee on Governmental Affairs recognized that the "[d]elegable functions of the [vacant] office could still be performed by other officers or employees," even where no acting official was serving under the FVRA. S. Rep. No. 105-250, at 18. And the Government Accountability Office—the arm of Congress charged with monitoring FVRA compliance—agrees that non-acting officials can perform the lawfully delegated duties of a vacant office. *See* Letter from Gary L. Kepplinger, General Counsel, GAO, to U.S. Senators Richard J. Durbin, Russell D. Feingold, and Edward M. Kennedy (June 13, 2008) (concluding that the FVRA did not prohibit Steven Bradbury from performing the duties of the vacant office of Assistant Attorney General for OLC while serving as Principal Deputy Assistant Attorney General), *available at* https://www.gao.gov/assets/b-310780.pdf.

Prior to the Second Circuit's decision in *In re Grand Jury Subpoenas*, *supra,* that Court and other Courts of Appealendorsed the view that the FVRA does not preclude a non-acting officer from exercising lawfully delegated duties of a vacant PAS office. *See Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132, 135 (2d Cir. 2009); *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1336 (Fed. Cir. 2022). Other Circuits have adopted similar logic in holding that the FVRA's remedial provisions do not prohibit ratification of an agency official's performance of lawfully delegated duties of a vacant office. *See Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1073-74 (9th Cir. 2024); *Kajmowicz v. Whitaker*, 42 F.4th 138, 148 (3d Cir. 2022).

To be sure, in *In re Grand Jury Subpoenas*, the Second Circuit affirmed this Court's ruling that the breadth of the Attorney General's delegation of authority to Mr. Sarcone as a special attorney pursuant to 28 U.S.C. § 515 and related statutes rendered the delegation invalid. The Ninth Circuit and Third Circuits also have so held. *Jackson*, 2026 WL 2387099, at **12-13 (9th Cir. Aug. 17, 2026); *United States v. Giraud*, 160 F.4th 390, 402–06 (3d Cir. 2025). These decisions conflict with the holding of the Federal Circuit in *Arthrex*, where that Court determined that the exclusivity clause of FVRA did not prohibit an officer's exercise of a delegable function pursuant to the *wholesale* delegation of the delegable functions of a vacant PAS office. 35 F.4th at 1335-38. Indeed, the Second, Third, and Ninth Circuits have recognized the Circuit split over this issue. *In re Grand Jury Subpoenas*, 2026 WL 2450485, at *14; Jackson, 2026 WL 2387099, at *13. Respectfully, the Federal Circuit's understanding of the FVRA's exclusivity clause is the correct one.

Broad delegations are common and have not historically been challenged in litigation. Take, for example, the Deputy Attorney General's authority to exercise all the delegable functions of the Attorney General, *see* 28 C.F.R. § 0.15, which encompasses not just all the delegable functions of every U.S. Attorney, but also all the delegable functions of the many other PAS officers in the Department of Justice, *see* 28 U.S.C. §§ 509, 510.

Likewise, 28 U.S.C. § 515 is broadly worded, permitting the Attorney General to direct any special attorney to "conduct any kind of legal proceeding . . . including grand jury proceedings . . . which United States attorneys are authorized by law to conduct." 28 U.S.C. § 515(a). Accordingly, for more than a century, courts have construed § 515 and its precursor to confer broad authority upon the Attorney General, other DOJ officers, and her special attorney appointees "to institute litigation, to enter into pending litigation, and to co-operate with the

district attorney or to proceed to handle such litigation independent of" the U.S. Attorney. *United States v. Hall*, 145 F.2d 781, 785 (9th Cir. 1944); *see United States v. Wrigley*, 520 F.2d 363, 367 n.10 (8th Cir. 1975) (§ 515(a) "is a broad grant of authority"); *United States v. Martins*, 288 F. 991, 992 (D. Mass. 1923); *cf. United States v. Birdman*, 602 F.2d 547, 561 n.62 (3d Cir. 1979) (citing *Wrigley*).

For example, one court upheld a § 515(a) appointment "'to prosecute unspecified persons for unspecified crimes in the Eastern District of Wisconsin and other districts.'" *Infelice v. United States*, 528 F.2d 204, 206 (7th Cir. 1975). Another upheld an appointment to prosecute specified cases "and in such other cases and matters as may be assigned to you." *Martins*, 288 F. at 992. And *Wrigley* upheld § 515(a) appointments to conduct "any kind of legal proceedings, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized to conduct." 520 F.2d at 364. The Eighth Circuit rejected the argument that such an appointment "would allow the Attorney General to usurp, through the appointment of special attorneys, the function of the United States Attorneys." *Id.* at 365, 367. All those cases faithfully applied § 515's text, because "any" means everything the Attorney General authorized the appointee to do. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'").

Critically, because the FVRA applies across the entire Executive Branch, its meaning cannot turn on the result of its application to one specific office in one specific agency, as the district court correctly recognized in *United States v. Ramirez*, 807 F. Supp. 3d 1086, 1113-14 (C.D. Cal.), *reconsideration denied*, 812 F. Supp. 3d 1011 (C.D. Cal. 2025). To the extent that the primary functions of a Department of Justice lawyer—participating in litigation and

supervising others—can be delegated to any Department lawyer, that is a feature of the Department of Justice that has little to do with the FVRA.

Accordingly, even if Mr. Sarcone's service as Acting U.S. Attorney was invalid, he was authorized to supervise the Office—including the presentation of indictments and engaging in plea negotiations—in his capacity as FAUSA. Several district courts have reached this same conclusion under similar circumstances. In *Ramirez*, for example, the district court concluded that even if the FVRA invalidated the service of the Acting U.S. Attorney Bilal A. Essayli, he "was properly appointed as a Special Attorney and designated as the FAUSA." 807 F. Supp. 3d at 1112. Accordingly, the court found it had "no basis to preclude" Mr. Essayli "from performing the lawful duties of a FAUSA," which included supervising prosecutions. *Id.* The court recognized that this authority "stems from the power of the Attorney General to delegate [her] authority." *Id*. at 1114; *accord United States v. Ndissi*, No. 2:25-CR-00143-CR-1, 2026 WL 318836, at *4 (D. Vt. Feb. 5, 2026). Similarly, in *United States v. Ramirez-Martinez*, No. 1:22-CR-01721-KWR, 2026 WL 113431 (D.N.M. Jan. 14, 2026), the district court considered a similar delegation by the Attorney General to then-Assistant United States Attorney Ryan Ellison. As here, the Attorney General delegated to Mr. Ellison "all the delegable, nonexclusive functions of the United States Attorney for the District of New Mexico." *Id*. at *9. The Attorney General also designated Mr. Ellison as the FAUSA, as she did here. *Id*. Although the district court in *Ramirez-Martinez* determined that the § 515 delegation could not authorize Mr. Ellison to perform all the functions of the United States Attorney, it nevertheless determined that this delegation authorized Mr. Ellison to perform the functions of a FAUSA, including supervising and conducting legal proceedings in that district. *Id*. at *19-20. As a result, the district court refused to invalidate actions taken by Mr. Ellison within the scope of those delegable functions

and refused to disqualify him from performing the lawful duties of a FAUSA. *Id*. at *21-24; *see also United States v. Martinez,* No. 2:25-CR-692-MEMF, 2026 WL 1850083 (C.D. Cal. June 24, 2026) (denying motion to dismiss indictment on same grounds).

Thus, even if the FVRA prohibited Mr. Sarcone from assuming the position of Acting U.S. Attorney, he had independent authority, delegated to him by the Attorney General, to supervise criminal prosecutions in the NDNY.

## III. The Indictment Should Not Be Dismissed Because It Was Lawfully Obtained by Duly Authorized AUSAs.

The Defendant argues that his indictment should be dismissed because he claims the decision to seek an indictment was "made by a private citizen," referring to Mr. Sarcone, "who was not lawfully appointed [to] any relevant position." Dkt. 40, at 12. As discussed above, that argument is wrong as a matter of law.

In any event, as the Defendant acknowledges, his indictment was signed not by Mr. Sarcone, but by an Assistant U.S. Attorney, whose authority the Defendant has not challenged. "Because [AUSAs] are appointed directly by the Attorney General . . . their ability to act does not hinge on the authority of the local United States Attorney, but derives from the Attorney General's plenary power over litigation to which the United States is a party[.]" *United States v. Hilario*, 218 F.3d 19, 22 (1st Cir. 2000) (citing 28 U.S.C. §§ 516 & 542); *see also, e.g., United States v. Garcia*, No. 25-cr-227, 2025 WL 2784640, at *15-16 (D. Nev. Sept. 30, 2025); *Ramirez*, 807 F. Supp. 3d at 1107; *Ndissi*, 2026 WL 318836, at *4, *5; *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1196 (D.N.M. 2008); *United States v. Dillard*, No. 4:24cr47, 2026 WL 560356, at *4-5 (E.D. Va. Feb. 27, 2026). Thus, regardless of whether Mr. Sarcone's name is on the signature block of the Defendant's indictment, the indictment is valid and should not be

dismissed: it was signed by AUSA Gillis, who derived his prosecutorial authority directly from the Attorney General. *See, e.g., Garcia*, 2025 WL 2784640, at *16; *Ramirez*, 807 F. Supp. 3d at 1114; *Ramirez-Martinez*, 2026 WL 113431, at *21; *Ndissi*, 2026 WL 318836, at *4 & n.2 (collecting cases).[8]

Pursuant to the Rules of Criminal Procedure, an indictment "must be signed by an attorney for the government[,]" Fed. R. Crim. P. 7(c)(1), which by definition includes an AUSA, Fed. R. Crim. P. 1(b)(1)(B), 1(b)(1)(D); *Ramirez-Martinez*, 2026 WL 113431, at *22 n.228. The purpose of the rule is to demonstrate that the prosecutor vouches for the indictment's authenticity and joins with the grand jury in instituting a criminal proceeding. *Kelley v. United States*, 989 F.3d 67, 68-70 (1st Cir. 2021). The signature of AUSA Gillis is therefore more than sufficient to satisfy the purpose of the rule and preclude dismissal of the Defendant's indictment. *See, e.g., Garcia*, 2025 WL 2784640, at *16; *Ramirez-Martinez*, 2026 WL 113431, at *22; *see also Ndissi*, 2026 WL 318836, at *5, *6 & n.4 (indictment at issue was valid because signed by AUSAs; distinguishing *United States v. Comey*, 2025 WL 3266932 (E.D. Va. Nov. 24, 2025), in which the indictment was dismissed because it was signed and presented to grand jury solely by interim U.S. Attorney whom the court concluded was invalidly appointed).

AUSA Gillis's signature on the indictment establishes that the Defendant received the due process to which he is entitled. *Ndissi*, 2026 WL 318836, at *7. The role of AUSA Gillis in obtaining the indictment also establishes that the Defendant's indictment is valid regardless of Mr. Sarcone's role in the Office. *See United States v. Giraud*, 795 F. Supp. 3d 560, 605–06

---

[8] In *Jackson*, the Ninth Circuit concluded it lacked jurisdiction over the defendants' cross-appeals challenging the refusal of the district court to dismiss the indictments in those cases. 2026 WL 2387099, at **13-14.

(D.N.J.), *aff'd*, 160 F.4th 390 (3d Cir. 2025) (concluding that an indictment was valid despite being signed by an individual the court concluded was unlawfully serving as Interim United States Attorney). The mere presence of Mr. Sarcone's name in the signature block does not change the legal analysis. *Cf. Dillard*, 2026 WL 560356, at *6; *Ramirez*, 807 F. Supp. 3d at 1109-10.

There is no basis for dismissal. As this Court has made clear, its previous ruling regarding Mr. Sarcone's appointment "imposes a narrow disqualification that applies only to the two investigations at issue [in that case], and rests on Mr. Sarcone's direct and personal involvement with subpoenas issued during ongoing pre-indictment investigations." *In re Grand Jury Subpoenas to the Office of N.Y. State Attorney General*, No. 25 Misc. 19 (LGS), 2026 WL 686046, at *3 (N.D.N.Y. Mar. 11, 2026). Moreover, as noted above, *supra* n.5, the government has appealed this Court's decision in *In re Grand Jury Subpoenas*, and its arguments supporting Mr. Sarcone's authority are not frivolous. *See, e.g.*, *Asylumworks v. Mayorkas*, No. 20-CV-3815 (BAH), 2023 WL 2733722, at *7 (D.D.C. Mar. 31, 2023) (rejecting claim of bad faith where government defendants sought review of district court ruling under FVRA).

## IV. The Indictment Should Not Be Dismissed Based on Outrageous Government Conduct or Vindictive Prosecution.

The Defendant argues in the alternative that the indictment should be dismissed "based on outrageous government conduct" and because of vindictive prosecution. Dkt. 40, at 11-13. Both arguments lack merit and should be rejected.

### A. Outrageous Government Conduct

The Defendant argues that the indictment should dismissed due to outrageous government conduct. Dkt. 40, at 11-12. He claims that Mr. Sarcone's exercise of his authority,

even after this Court's order in *In re Grand Jury Subpoenas*, warrants dismissal. The Defendant overlooks that dismissal based on outrageous government conduct is usually warranted only in scenarios where government officials were involved in the facts of the underlying case. *See United States v. Cuervelo*, 949 F.2d 559, 565 (2d Cir. 1991) ("[T]o obtain dismissal of an indictment based upon a claim of outrageous governmental conduct, a defendant must establish that the government engaged in outrageous behavior *in connection with the alleged criminal events*") (emphasis added). The Defendant here makes no showing that Mr. Sarcone or any other government actor engaged in outrageous conduct in connection with the facts underlying the Defendant's indictment for distributing child pornography on seven different occasions.

The Supreme Court has suggested that in an extreme case, government involvement in criminal activity might be "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431-32 (1973). Only government conduct that "shocks the conscience" can violate due process. *United States v. Chin*, 934 F.2d 393, 398 (2d Cir. 1991) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)). Generally, for conduct to be "outrageous," it must involve either coercion or a violation of a defendant's person. *United States v. Al Kassar*, 660 F.3d 108, 121 (2d Cir. 2011). A defendant bears the burden of proof to establish such conduct, and the burden is "very heavy" because of courts' "well-established deference to the government's choice of investigatory methods." *Id*. (quoting *Rahman*, 189 F.3d 88, 131 (2d Cir. 1999). Because of this high bar, it is extremely rare for any appellate court to find a due process violation based on outrageous government conduct. *See United States v. Greenberg*, No. 21-CR-92 (AJN), 2022 WL 827304, at *7 (S.D.N.Y. March 9, 2022) (collecting cases and finding that

"the Second Circuit has rarely, if ever" ruled in favor of a defendant's outrageous-government-conduct claim).

The Defendant argues that the Attorney General's "intransigence" and supposed actions "undertaken with the express intention of circumventing statutory and constitutional safeguards" are sufficiently shocking to warrant dismissal. Dkt. 40, at 11-12. As discussed above, these assertions are wrong as a matter of law. But in any event, the Defendant fails to establish that executive actions relating to office leadership within a U.S. Attorney's Office might constitute outrageous government conduct sufficient to warrant dismissal. The Defendant does not assert that the government was involved in any way with the conduct underlying his indictment. He does not allege that government agents coerced him or violated his person, *see Al Kassar*, 660 F.3d at 121; *United States v. Bout*, 731 F.3d 233, 239 (2d Cir. 2013) (finding that "coercion or a violation of [the defendant's] person" would be "necessary, at a minimum, to prevail on an outrageous government conduct charge").

In other scenarios, defendants may attempt to prove that an indictment should be dismissed by establishing that some kind of misconduct prejudiced him in the grand jury. *See, e.g., Bank of Nova Scotia v. United States*, 487 U.S. 250, 256-57 (1988); *Garcia*, 2025 WL 2784640, at *16 & n.10. The Defendant makes no such showing. He does not argue that the grand jury itself was improperly constituted, or that his due process rights were violated. He has not attempted to show that he was prejudiced by the appearance of Mr. Sarcone's name on the indictment. *Cf. Garcia*, 2025 WL 2784640, at *16 & n.10 (although individual was improperly serving as the acting U.S. Attorney, the presence of her name on the indictment's signature block did not require dismissal in the absence of any demonstration of prejudicial misconduct because

the indictment was properly signed by AUSAs). In short, the Defendant has not made out a viable case for dismissal of his indictment.

**B. Vindictive Prosecution**

The Defendant also argues that the indictment should be dismissed as "vindictive prosecution" because he was originally charged by complaint with a single violation of 18 U.S.C. § 2252A(a)(2), but was indicted for seven counts of distribution of child pornography instead. Dkt. 40, at 12. He asserts, without evidence, that "Mr. Sarcone terminated negotiations and directed his subordinates to obtain a seven-count indictment solely because this office [FPD] challenged his authority in a separate case." *Id*. at 13. The Defendant's argument fails because he cannot establish a presumption of vindictiveness pretrial and has failed to advance any actual evidence of vindictiveness.

"A prosecution brought with vindictive motive, penalizing those who choose to exercise constitutional rights, would be patently unconstitutional." *United States v. Stewart*, 590 F.3d 93, 122 (2d Cir. 2009) (quotation omitted). For an indictment to be dismissed due to prosecutorial vindictiveness, "the defendant must show that the circumstances of a case pose a realistic likelihood of such vindictiveness." *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (cleaned up). There are two ways of proving vindictive motive: (1) where there is direct evidence of actual vindictiveness; or (2) where a rebuttable presumption of a vindictive motive has been established. *United States v. White*, 972 F.2d 16, 19 (2d Cir. 1992). However, a defendant may not argue for a rebuttable presumption of vindictiveness pretrial, because such a presumption "does not exist in a pre-trial setting." *United States v. Hinton*, 703 F.2d 672, 678-79 (2d Cir. 1983). The Defendant acknowledges that he cannot advance such an argument pretrial,

*see* Dkt. 40, at 13. Nevertheless, he asserts that the bare fact of the seven-count indictment "constitute[s] direct evidence of vindictive prosecution." *Id*. at 13 n.38.

To establish an actual vindictive motive, a defendant must "prove objectively that the prosecutor's charging decision was a direct and unjustifiable penalty . . . that resulted solely from the defendant's exercise of a protected legal right." *Sanders*, 211 F.3d at 716-17 (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)). The defendant must show that the prosecutor harbored "genuine animus" against the defendant, and that the defendant would not have been prosecuted except for that animus. *Sanders*, 211 F.3d at 717. "A finding of actual vindictiveness requires direct evidence, such as evidence of a statement by the prosecutor, which is available only in a rare case." *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir. 1999) (cleaned up) (quoting *Goodwin*, 457 U.S. at 380-81, 380 n.12, 384 n.19).

Here, the Defendant fails to advance "direct evidence" of animus by Mr. Sarcone against the Defendant. The Defendant claims that Mr. Sarcone's decision to reject his plea proposals stems from FPD filing a motion "challenging his authority" in a separate case[9] but presents no statement from Mr. Sarcone or any other prosecutor establishing or even alluding to such a basis. Other than the fact that both defendants are represented by FPD, no connection exists between the two whatsoever. The Defendant similarly fails to present a statement from Mr. Sarcone or any other prosecutor establishing that Mr. Sarcone was involved in the decision to charge the Defendant with multiple counts of distribution of child pornography instead of just one. The Defendant also fails to establish that he would not have been prosecuted but for the alleged animus. Justification for a multi-count indictment is found in the complaint, which discusses

[9] *United States v. Ziair Dunlap*, No. 25-CR-302 (GTS), Dkt. 38 (filed June 5, 2026).

how the Defendant engaged in distribution of child pornography with more than one individual, *see* Dkt. 1, at 5-6, and the Office's declination of the Defendant's proposed dispositions predated Mr. Sarcone's involvement altogether. *See* Factual Background, Paragraphs 8-9, *supra* (noting the Office's declination of Defendant's proposed resolutions prior to Defendant's direct request to Mr. Sarcone). Furthermore, the seven-count indictment is not retaliatory because an increased number of distribution-of-child-pornography counts has no impact whatsoever on the Defendant's anticipated Guidelines range and does not increase his mandatory minimum sentence. *See* 18 U.S.C. § 2252A(b)(1); U.S.S.G. § 3D1.2 (directing "counts involving substantially the same harm" to be grouped together for Sentencing Guidelines purposes).

Courts have consistently held that prosecution officials are not bound by charges brought in an initial charging document. "An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." *Goodwin*, 457 U.S. at 380; *United States v. Sattar*, 314 F. Supp. 2d 279, 313-14 (S.D.N.Y. 2004) (fact of superseding indictment that brought charges known to prosecutors at time of original indictment was not evidence of actual vindictiveness); *Parker v. United States*, No. 12364123, 2013 WL 12364123, at *4-5 (W.D.N.Y. Dec. 17, 2013) (defendant failed to establish government brought superseding indictment to retaliate against defendant's motion to reopen suppression hearing; defendant "merely makes a conclusory allegation" that does not constitute "evidence that the prosecution acted in bad faith or with animus"). "A prosecutor should remain free before trial to

exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *Goodwin*, 457 U.S. at 382.

The Defendant asserts that this case is not a scenario where the government obtains additional charges after he rejected a plea bargain. Dkt. 40, at 13. But this is precisely what occurred. The government did decline the Defendant's proposed resolutions, but it offered an alternative: that the Defendant plead guilty to the single charge alleged in the complaint. The Defendant refused, acknowledging the government's next step was likely indictment. *See* Factual Background, Paragraph 11, *supra*. Thereafter, the Office pursued and obtained additional charges because its "initial expectation that a defendant would plead guilty to lesser charges prove[d] unfounded." *Goodwin*, 457 U.S. at 380. The Defendant has failed to establish that this exercise of the government's broad discretion constituted actual animus against him or that he would not have been prosecuted but for that animus.

## V. There Is No Basis or Authority for Court Oversight Over Future Plea Negotiations.

The Defendant also requests that this Court "void[] Mr. Sarcone's review and [deny] all negotiations the parties conducted after the criminal complaint was filed." Dkt. 40, at 15. Presumably, the Defendant seeks the Court to order that the Office reevaluate the Defendant's proposals that the government dismiss charges or permit a plea to a possession of child pornography charge. But this ignores the requirement that the Court "not participate" in plea discussions. Fed. R. Crim. P. 11(c)(1); *see also United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 137 (2d Cir. 2017) (quoting *In re U.S.*, 503 F.3d 638, 641 (7th Cir. 2007) ("A judicial effort to supervise a prosecutor's process of reaching a decision intrudes impermissibly into the activities of the Executive Branch of government") (cleaned up)); *In re Seizure of Funds in Accounts in Names Registry Pub. Inc.*, 68 F.3d 577, 582 (2d Cir. 1995) (quoting *United States v.*

*Burzynski Cancer Research Inst.*, 819 F.2d 1301 (5th Cir. 1987) ("[A]s an incident to the separation of powers founded in the Constitution, the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions")). Additionally, the Defendant has no substantive or procedural right to require the government to consider a particular proposal to resolve his case. As discussed above, the Office has unfettered prosecutorial discretion with respect to charging and plea decisions.

"Just as there can be no right without a remedy, so too there can be no remedy without a right." *United States v. Carroll*, No. 19 CR 545 (CM), 2020 WL 1862446, at *9 (S.D.N.Y. Apr. 14, 2020). The Office's decision to consider—and then ultimately reject—the Defendant's proposed resolutions imposed no future limitation on the government's traditional prosecutorial discretion. *See United States v. Al Jibori*, 90 F.3d 22, 25 (2d Cir. 1996) ("[P]rosecutors retain broad discretion to enforce our criminal law[.]") (citation modified). Moreover, there is no evidence, and the Defendant does not argue, that the decision to decline the Defendant's proposed resolutions was due to "an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

The Defendant fails to articulate specific relief to which he is entitled should the Court grant his request to "void[] Mr. Sarcone's review" of the Defendant's proposed resolutions or "[deny] all negotiations the parties conducted after the criminal complaint was filed." Dkt. 40, at 15. He further fails to identify the Court's authority to take such action.

## VI. The Defendant Is Not Entitled to Discovery on His Claims.

As alternative relief, the Defendant requests discovery as to Mr. Sarcone's "participation and involvement" in the Office's "charging and negotiation decisions." Dkt. 40, at 15. But he fails to cite any authority supporting his request, and despite claiming that such discovery "is

necessary," he also fails to identify what contested material facts he hopes to develop. "Vague allegations, bald assertions of impropriety, or speculation about what the grand jury materials may reveal are insufficient to establish a particularized need for disclosure." *Giraud*, 795 F. Supp. 3d at 606 (quotation and citation omitted). The district court in *Giraud* denied the defendant's request for discovery, which was based on "speculati[on] that Ms. Habba [the challenged Interim U.S. Attorney] may have played a role in influencing the charges that were included in this indictment." *Id.* And the *Giraud* defendant's insufficient speculation at least cited *some* (albeit insufficient) facts, including that Ms. Habba made a general public statement relating to the underlying facts of the *Giraud* defendant's case. *Id.* Additionally, in *Giraud*—and unlike this case—Ms. Habba actually signed the indictment. The Defendant cites *no facts* to support his speculation that Mr. Sarcone had a role in the decision-making process behind his prosecution and indictment.[10]

"Because law enforcement is a core executive constitutional function, judicial intrusion into prosecutorial decisions is justified only when the Constitution requires it." *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) (citation modified). In an analogous context of defendants seeking discovery in support of claims of vindictive or selective prosecutions, the Second Circuit has held that it is a "rigorous" standard in which the defendant "must provide some evidence tending to show the existence of the essential elements of the [claim]." *Sanders*, 211 F.3d at 717 (quotations omitted). That is because "examining the basis of a prosecution delays the criminal

---

[10] To the extent that the Court determines that it requires additional facts regarding the individuals involved in the approval and presentment of the Defendant's indictment to render its decision, the government will provide such materials for the Court's *in camera* review upon request. *See Giraud*, 795 F. Supp. 3d at 605 and n.292 (determining that an *in camera* review "is appropriate given the secrecy requirements that attend grand jury proceedings").

proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).

The Defendant acknowledges that Mr. Sarcone did not sign the indictment. The Defendant had no constitutional or statutory right to require the Office to consider his proposed case resolutions, nor would he have any such right in the future regardless of this Court's decisions on the Defendant's motion. The Defendant has failed to assert any claims, let alone facts to support them, that the decisions related to the plea negotiations or indictment constituted "outrageous government conduct," vindictive prosecution, or were motivated by improper considerations such as race or religion in violation of his constitutional rights. Therefore, his requests for unspecified discovery should be denied.

**CONCLUSION**

The Defendant's requests to dismiss the indictment, obtain discovery, or for the Court to intervene in plea negotiations should be denied.

Respectfully submitted on this the 24th day of August, 2026.

Benjamin A. Gillis
Assistant United States Attorney
Bar Roll No. 704915